**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KENROY TAYLOR, | : | |
| *Plaintiff*, | : | DKT No.: |
| v. | : | |
| CITY OF NEW HAVEN; OTONEIL REYES; RENEE DOMINGUEZ; STEPHEN TORQUATI; MARK O'NEIL; CHRISTOPHER CAMERON; LOUIS DECRESCENZO; CARLOS CONCEICA; EDWARD DUNFORD; MARTIN FELICIANO, | : | |
| *Defendants*. | : | APRIL 12, 2022 |

## COMPLAINT

1. This is an action that seeks to end discrimination against a New Haven police officer, Kenroy Taylor, who has gone out of his way to comply with the City of New Haven's grooming policies insofar as they do not conflict with his faith and his medical condition, who the City of New Haven has refused any and all reasonable accommodations, and who a member of the New Haven police department has physically assaulted in the course of the dispute over his requested accommodation. Taylor seeks declaratory and injunctive relief, compensatory and punitive damages, and costs and attorneys' fees.

## PARTIES

2. Plaintiff Kenroy Taylor is a police officer employed by the City of New Haven, Connecticut.

3. Defendant City of New Haven is a municipal corporation incorporated under the laws of the state of Connecticut. As part of its municipal functions, it operates the New Haven Police Department. Upon information and belief, the City of New Haven has more than 500 employees.

4. Defendant Otoneil Reyes served as the chief of the New Haven Police Department from 2019 to January 2021. Upon information and belief, he is currently chief of Quinnipiac University's Department of Public Safety. He is sued in his individual capacity only.

5. Defendant Renee Dominiquez is the current acting chief of the New Haven Police Department and has held the post since March 2021. She is sued in her individual capacity only.

6. Defendant Stephen Torquati is a lieutenant in the New Haven Police Department. He is sued in his individual capacity only.

7. Defendant Mark O'Neil is a lieutenant in the New Haven Police Department. He is sued in his individual capacity only.

8. Defendant Christopher Cameron is a lieutenant in New Haven Police Department. He is sued in his individual capacity only.

9. Defendant Louis Decrescenzo is a sergeant in the New Haven Police Department. He is sued in his individual capacity only.

10. Defendant Carlos Conceica is a sergeant in the New Haven Police Department. He is sued in his individual capacity only.

11. Defendant Edward Dunford is a sergeant in the New Haven Police Department. He is sued in his individual capacity only.

12. Defendant Martin Feliciano is a sergeant in the New Haven Police Department. He is sued in his individual capacity only.

## JURISDICTION

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367, 29 U.S.C. § 794, and 42 U.S.C. §§ 1981, 1983, 1988, and 12112.

14. Venue is appropriate pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to Taylor's claims occurred with this judicial district.

## FACTUAL ALLEGATIONS

### *Kenroy Taylor's Background & Beliefs*

15. Kenroy Taylor has enjoyed almost a decade-long career in public and community service. He has worked as a probation officer, a case manager at a homeless shelter specializing in getting the homeless back on their feet, and a correctional officer with the Connecticut Department of Corrections. He also volunteered for the West Haven VA Hospital's social work department for over seven years. He has been employed by the City of New Haven as a police officer since November 2014.

16. Taylor holds a Master's Degree in Computer Science with a concentration in cyber/computer forensics and counterterrorism from the University of New Haven and a Bachelor's Degree in Social Work from Southern Connecticut State University.

17. Taylor is a practicing Rastafarian – a religion that originated in Jamaica and that has spread across the world as a distinct religious minority.

18. A critical tenet of Rastafarianism for men is the growth of hair on both the head and the face, which symbolizes their spiritual covenant and a symbolic rejection of

evil. Rastafarians, including Taylor, believe in wearing their hair in dreadlocks and in men growing beards.

19. Like any religious minority, Rastafarian beliefs have encountered significant opposition and discrimination:

a. In Jamaica, police and teachers would forcibly cut off Rastafarians' dreadlocks during mid-1900s. *See* Leonard E. Barrett, *The Rastafarians*. Boston Press, p. 139 (1997).

b. In Ghana, Rastafarian dreadlocks are considered to be indicia of homelessness and mental illness. *See* Carmen M. White, *Rastafarian Repatriates and the Negotiation of Place in Ghana*, Ethnology 49(4), p. 310 (2010).

c. In Malawi, Rastafarians were banned from public schools if they had dreadlocks until the High Court of Malawi held that Malawi's constitution did not permit public schools to bar Rastafarians because of their dreadlocks in 2020.[1]

20. Taylor believes in wearing his hair in dreadlocks and in growing a beard as part of his Rastafarian faith.

***<u>The New Haven Police Department's Grooming Policy</u>***

21. The City of New Haven's Police Department regulates its officers through a set of policies known as General Orders.

22. General Order 85-1 regulates "Uniforms, Equipment and Grooming" for New Haven Police Officers. *See* **Exhibit A.** Section IV regulates grooming, and it begins

[1] https://www.reuters.com/article/us-malawi-rastafarians-idUSKBN1ZN177

with the directive that all employees "shall present a neat and clean appearance while on duty. *Id*. at p. 10.

23. General Order 85-1, § IV(B)(1)(a) permits male New Haven Police Officers to wear their hair

> in any contemporary and conservative style, conforming to the following: Hair shall be clean and well groomed and shall not extend more than two (2) upward from the [sic] top nor two (2) inches outward from the side of the head; hair shall not extend below the top of the anti-helix of the ear and shall be tapered to the rear of the head where the length shall not extend downward more than one (1) inch beyond the hairline at the back of the neck, and in no event shall the hair extend below the mid-part of the shirt collar in the normal standing position, nor shall in any way interfere with the proper wearing of the uniform hat, helmet, or gas mask.

24. General Order 85-1, § IV(B)(1)(b) prohibits male New Haven Police Officers from growing facial hair except for moustaches:

> Except for a moustache, the face shall be clean shaven. The moustache shall be neat (not bushy), trimmed, and shall not extend downward beyond the lower lip or upward in a curled or handlebar style. Waxing of the moustache is prohibited. Goatees or hair growth below the lower lip is prohibited. In no event shall the wearing of a moustache interfere with the proper wearing (fit) of a gas mask.

The prohibition, however, does contain a carve out for medical conditions:

> Officers who experience a skin disorder aggravated by shaving are exempt from the above so long as the condition persists and the officer conforms to the following requirements:
>
> - Submits a letter to the Personnel Officer through the proper Chain of Command from a certified dermatological physician expressing the physician's opinion in detail that the medical treatment and therapy of the skin disorder requires that the officer stop shaving.
> - Continues to receive treatment for the disorder on a regular basis, supplying the Personnel Officer with a continuing update of his condition.
> - Keeps facial hair to the minimum required by the condition.
> - Keeps facial hair clean and well groomed.
> - Submits to photographs showing his new appearance with said photographs kept on file in both Personnel and Internal Affairs.

25. Despite General Order 85-1, the New Haven Police Department has given department-wide dispensations from its shaving policy on occasion. For instance, it allowed officers to skip shaving in November 2018 in an effort to raise money for cancer research and awareness – even holding a competition of who could grow the best and worst beards, which was judged by female officers. It even awarded Defendant Dunford a day off for raising the most money, and Defendant Reyes himself took part in the contest.

***Police Departments Across The United States Permit Officers To Grow Beards***

26. Police departments across the United States have begun to allow their officers to wear beards and other facial hair, generally with the caveat that they must be well-groomed. Some examples are cited below.

27. New York City allows its police officers to grow beards for religious reasons. It is not uncommon to see a devout Sikh New York City police officer directing traffic while wearing a beard and a turban that covers his hair.[2]

28. Detroit also allows its police officers to wear facial hair as well, stating that it has no impact on performance.[3]

29. Dallas also joined Detroit and New York in allowing its officers to grow beards, provided that they kept their beards well-groomed.[4]

***Taylor's Beard & The Defendants' Discrimination***

---

[2] https://www.bbc.com/news/world-us-canada-38456787

[3] https://www.freep.com/story/news/local/michigan/detroit/2016/12/25/detroit-cops-grow-beards/95804366/

[4] https://www.texasmonthly.com/the-daily-post/dallas-police-department-beards/

30. In accordance with his religious beliefs, Taylor wishes to grow a beard. He has communicated that to the Defendants on multiple occasions since at least 2019 and he has requested a religious accommodation to grow a beard.

31. Taylor also suffers from a chronic medical condition that makes shaving difficult and painful for him. He has communicated that to the Defendants on multiple occasions since at least 2019, and he submitted quarterly medical notes from a dermatologist in support of his disability accommodation requests.

32. The Defendants, however, have ignored Taylor's request, and they have actively engaged in efforts to discipline him out of the New Haven Police Department in retaliation for his accommodation requests.

33. On January 6, 2020, Defendants Torquati and Feliciano pulled Taylor into a meeting in which they told him that the Department does not have a religious exemption to its grooming policies and ordered him to get an updated letter from his doctor for medical purposes within 5 days. They then sent him home.

34. Taylor immediately went to the City of New Haven's HR department to express his concerns that he was being religiously discriminated against, and the City's HR representative spoke with Defendant Dominguez, who informed them that Taylor could not return to work until he complied with the Department's grooming policies.

35. As a result of being relieved of duty on January 6, 2020, Taylor was relieved of duty and missed out on opportunities to work extra duty and overtime on January 7, 8, and 10, 2020.

36. On February 5, 2020, Defendant Reyes ordered Taylor to report to him in the Chief's office for discipline. During that meeting, Defendant Reyes ordered Taylor to

shave his beard despite knowing that Taylor had a beard for religious reasons and because he had a medical condition.

37. Taylor politely refused, and Defendant Reyes threatened him that he would order his supervisors to "write him up" every day that he did not comply with the grooming policies.

38. When Taylor continued to refuse to violate his religious beliefs, Defendant Reyes suspended him for 5 days without pay.

39. Defendants Torquati and O'Neil then supervised the execution of Defendant Reyes' threat to have Taylor written up for wearing a beard for religious reasons despite Defendant Torquati acknowledging to Taylor that he thought it was wrong to write him up. Upon information and belief, Defendants Cameron, Decrescenzo, Conceica, Dunford, and Feliciano all participated in writing up Taylor in accordance with Defendant Reyes' threat to Taylor despite knowing that he was seeking religious and medical accommodations.

40. The Defendants, however, took no disciplinary action against four officers who failed to comply with the beard policies and did not claim a medical or religious exception. Upon information and belief, one of these officers included Defendant O'Neil himself.

41. Subsequently, over the next four months, the Defendants manufactured a bevy of allegations of misconduct against Taylor, including allegations of dishonesty that would keep him from ever serving as a police officer in any jurisdiction in the United States again.

42. They then placed him on administrative leave, which he remains on to this day, and recommended his termination to the City of New Haven's Board of Police Commissioners – a hearing which has yet to occur.

43. The Defendants took these actions because they view Taylor as a problem and because they have animus toward Taylor's religious practices and his disability.

***Defendant Dunford Assaults Taylor***

44. On February 17, 2022, Taylor's union representative and his union attorney scheduled a 10:00 AM meeting with him in the New Haven Police Union's office, which is located in the New Haven Police Department.

45. Taylor arrived at the New Haven Police Department at approximately 9:45 AM and spoke with Defendant Dunford who was working at the front desk. Taylor told him what he had come to the police department for, and Defendant Dunford told him that he would get someone to escort him upstairs.

46. While Taylor was waiting for his escort, Defendant Torquati saw Taylor and opened the front desk's office door to say hello to him. After they spoke and shook hands, Defendant Torgusti walked away, and Taylor noticed that the door to the detail room was open.

47. He spotted several fellow officers, and he walked over to the open doorway to say hello. He did not, however, enter the detail room.

48. While Taylor was standing in the doorway, Defendant Dunford grabbed Taylor's arm without any warning and attempted to physically pull him away from the door.

49. Taylor asked Defendant Dunford to let him go, but Defendant Dunford refused. Taylor then managed to free himself from Defendant Dunford's grasp.

50. Instead of giving Taylor time to walk away from the door or comply with any commands, Defendant Dunford gave Taylor no commands at all. Instead, he grabbed Taylor again and pushed him toward the elevator before finally explaining that Taylor was not allowed to talk to anyone except the union.

51. Upon information and belief, Defendant Dunford took these actions against Taylor because he knew that Taylor had requested religious and medical accommodations to department policies.

***<u>Taylor's Legal Action</u>***

52. On or about February 28, 2020, Taylor filed a complaint with the Connecticut Commission of Human Rights and Opportunities (CHRO) alleging religious and disability discrimination.

53. On January 12, 2022, Taylor received a release of jurisdiction from the CHRO, giving him the right to bring some of the claims in this action. *See* **Exhibit A.**

**<u>COUNT ONE – RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT CITY OF NEW HAVEN ONLY</u>**

54. Paragraphs 1 through 53 are hereby incorporated herein.

55. Title VII of the Civil Rights Act of 1964 prohibits qualified employers from discriminating against employees on the basis of their religious beliefs, and it requires them to provide a reasonable accommodation to employees for their religious beliefs.

56. The Defendant City of New Haven is a qualified employer within the meaning of Title VII because, upon information and belief, it employs more than 1,000 employees.

57. The Defendant City of New Haven declined to give Mr. Taylor a reasonable accommodation to its grooming policy for his religious beliefs.

58. Allowing Taylor to grow a beard has no effect on Taylor's ability to properly perform the functions of a New Haven police officer.

59. Allowing Taylor to grow a beard will not disrupt the operations of the New Haven Police Department.

60. The City of New Haven has allowed its police officers to grow beards to raise money for charity in the past, which did not disrupt its operations in any way.

61. The Defendant City of New Haven's actions constitute unlawful religious discrimination against Taylor in violation of Title VII.

**COUNT TWO – RELIGIOUS DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60 AGAINST DEFENDANT CITY OF NEW HAVEN ONLY**

62. Paragraphs 1 through 61 are hereby incorporated herein.

63. Conn. Gen. Stat. § 46a-60 prohibits qualified employers from discriminating against employees on the basis of their religious beliefs, and it requires them to provide a reasonable accommodation to employees for their religious beliefs.

64. The Defendant City of New Haven is a qualified employer within the meaning of Conn. Gen. Stat. § 46a-60 because, upon information and belief, it employs more than 1,000 employees.

65. The Defendant City of New Haven declined to give Mr. Taylor a reasonable accommodation to its grooming policy for his religious beliefs.

66. Allowing Taylor to grow a beard has no effect on Taylor's ability to properly perform the functions of a New Haven police officer.

67. Allowing Taylor to grow a beard will not disrupt the operations of the New Haven Police Department.

68. The City of New Haven has allowed its police officers to grow beards to raise money for charity in the past, which did not disrupt its operations in any way.

69. The Defendant City of New Haven's actions constitute unlawful religious discrimination against Taylor in violation of Conn. Gen. Stat. § 46a-60.

## COUNT THREE – 42 U.S.C. § 1983 CLAIM FOR VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION AGAINST ALL DEFENDANTS

70. Paragraphs 1 through 69 are hereby incorporated herein.

71. New Haven Police Department General Order 85-1, § IV(B) is an official municipal policy or custom promulgated by the Defendant, City of New Haven.

72. General Order 85-1, § IV(B) caused Taylor to be subjected to the Defendants' denial of his First Amendment right to freely exercise his religion.

73. General Order 85-1, § IV(B) is not neutral and generally applicable because it establishes a system of individualized exemptions and categorically permits secular ones (medical exemptions to the grooming policy) that undermine the Defendant City of New Haven's alleged interest in the same way as religious exemptions do.

74. The Defendant City of New Haven does not have a compelling interest that justifies its refusal to permit officers to grow beards for religious reasons while permitting them to grow beards for medical reasons. If it does, General Order 85-1, § IV(B) is not narrowly tailored to vitiate that compelling interest.

75. The individual Defendants' actions in enforcing the policy violated Taylor's First Amendment right to freely exercise his religion.

76. The individual Defendants also violated Taylor's First Amendment right to freely exercise his religion by retaliating against him for requesting respect for his religious

beliefs by fabricating pretextual reasons to recommend his termination from the New Haven Police Department and to ensure that he never works as a police officer again.

**COUNT FOUR – CONN. GEN. STAT. § 52-571b CLAIM FOR VIOLATION OF FREE EXERCISE OF RELIGION UNDER ARTICLE I, § 3 OF THE CONNECTICUT CONSTITUTION AGAINST ALL DEFENDANTS**

77. Paragraphs 1 through 76 are hereby incorporated herein.

78. Defendant City of New Haven is a political subdivision of the state of Connecticut. The individual Defendants are, or were, employees of the City of New Haven at the time of their conduct as complained of herein.

79. The Defendants' actions, as described above, and New Haven Police Department General Order 85-1, § IV(B) burdened, and continued to burden, Taylor's free exercise of his religion.

80. These actions and New Haven Police Department General Order 85-1, § IV(B) do not further a compelling governmental interest.

81. These actions and New Haven Police Department General Order 85-1, § IV(B) is not the least restrictive means of furthering the Defendants' governmental interests.

82. New Haven Police Department General Order 85-1, § IV(B) is unconstitutional on its face and as applied to Taylor under Article I, § 3 of the Connecticut Constitution.

83. The actions of the Defendants violated, and continue to violate, Taylor's rights under Article I, § 3 of the Connecticut Constitution.

**COUNT FIVE – CONN. GEN. STAT. § 31-51q CLAIM FOR VIOLATION OF FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 3 OF THE CONNECTICUT CONSTITUTION AGAINST DEFENDANT CITY OF NEW HAVEN**

84. Paragraphs 1 through 83 are hereby incorporated herein.

85. Defendant City of New Haven is a political subdivision of the state of Connecticut.

86. Defendant City of New Haven has subjected Taylor to discipline in the form of a five-day suspension and now seeks to secure his pretextual discharge from its employment for his exercise of his rights to freely exercise his religious beliefs under the First Amendment and Article I, § 3 of the Connecticut Constitution.

87. Taylor's free exercise of his religious beliefs – the growing of a beard – has no impact on his performance of his job responsibilities or his working relationship with the City of New Haven, apart from its discrimination against him.

88. The Defendant City of New Haven's actions – as described above – render it liable to Taylor under Conn. Gen. Stat. § 31-51q.

**COUNT SIX – DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12112 (ADA) AGAINST DEFENDANT CITY OF NEW HAVEN ONLY**

89. Paragraphs 1 through 88 are hereby incorporated herein.

90. 42 U.S.C. § 12112 prohibits employers from discriminating against employees on the basis of a disability.

91. Taylor has a disability within the meaning of 42 U.S.C. § 12112 in the form of a skin condition that makes it impossible for him to shave consistently without aggravating his skin to the point of requiring medical condition.

92. The Defendant City of New Haven and its officials, including the named Defendants in this action, do frown on their police officers wearing beards regardless of the reason for wearing them.

93. The Defendant City of New Haven suspended Taylor for five days without pay for growing a beard that he had repeatedly told them was for both religious and medical reasons, despite requiring him to provide doctors' notes as to his condition.

94. The Defendant City of New Haven orchestrated a pretextual campaign to secure Taylor's discipline and termination because his disability required him to grow a beard instead of simply terminating him.

95. Allowing Taylor to grow a beard has no effect on Taylor's ability to properly perform the functions of a New Haven police officer.

96. Allowing Taylor to grow a beard will not disrupt the operations of the New Haven Police Department.

97. The City of New Haven has allowed its police officers to grow beards to raise money for charity in the past, which did not disrupt its operations in any way.

98. The Defendant City of New Haven's actions constitute unlawful disability discrimination against Taylor in violation of 42 U.S.C. § 12112.

**COUNT SEVEN – DISABILITY DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 794 (REHABILITATION ACT) AGAINST DEFENDANT CITY OF NEW HAVEN ONLY**

99. Paragraphs 1 through 98 are hereby incorporated herein.

100. 29 U.S.C. § 794 prohibits employers who receive federal financial assistance from discriminating against employees on the basis of a disability.

101. Upon information and belief, the Defendant City of New Haven has received federal financial aid or assistance in the calendar years of 2019, 2020, 2021, and 2022.

102. Taylor has a disability in the form of a skin condition that makes it impossible for him to shave consistently without aggravating his skin to the point of requiring medical condition.

103. The Defendant City of New Haven and its officials, including the named Defendants in this action, do frown on their police officers wearing beards regardless of the reason for wearing them.

104. The Defendant City of New Haven suspended Taylor for five days without pay for growing a beard that he had repeatedly told them was for both religious and medical reasons, despite requiring him to provide doctors' notes as to his condition.

105. The Defendant City of New Haven orchestrated a pretextual campaign to secure Taylor's discipline and termination because his disability required him to grow a beard instead of simply terminating him.

106. Allowing Taylor to grow a beard has no effect on Taylor's ability to properly perform the functions of a New Haven police officer.

107. Allowing Taylor to grow a beard will not disrupt the operations of the New Haven Police Department.

108. The City of New Haven has allowed its police officers to grow beards to raise money for charity in the past, which did not disrupt its operations in any way.

109. The Defendant City of New Haven's actions constitute unlawful disability discrimination against Taylor in violation of 29 U.S.C. § 794.

## COUNT EIGHT – DISABILITY DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60 AGAINST DEFENDANT CITY OF NEW HAVEN ONLY

110. Paragraphs 1 through 109 are hereby incorporated herein.

111. Conn. Gen. Stat. § 46a-60 prohibits employers from discrimination against employees on the basis of a disability.

112. Taylor has a disability in the form of a skin condition that makes it impossible for him to shave consistently without aggravating his skin to the point of requiring medical condition.

113. The Defendant City of New Haven and its officials, including the named Defendants in this action, do frown on their police officers wearing beards regardless of the reason for wearing them.

114. The Defendant City of New Haven suspended Taylor for five days without pay for growing a beard that he had repeatedly told them was for both religious and medical reasons, despite requiring him to provide doctors' notes as to his condition.

115. The Defendant City of New Haven orchestrated a pretextual campaign to secure Taylor's discipline and termination because his disability required him to grow a beard instead of simply terminating him.

116. Allowing Taylor to grow a beard has no effect on Taylor's ability to properly perform the functions of a New Haven police officer.

117. Allowing Taylor to grow a beard will not disrupt the operations of the New Haven Police Department.

118. The City of New Haven has allowed its police officers to grow beards to raise money for charity in the past, which did not disrupt its operations in any way.

119. The Defendant City of New Haven's actions constitute unlawful disability discrimination against Taylor in violation of Conn. Gen. Stat. § 46a-60.

**COUNT NINE – BATTERY AGAINST DEFENDANT EDWARD DUNFORD ONLY**

120. Paragraphs 1 through 119 are hereby incorporated herein.

121. "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975) (internal citations and quotation marks omitted). "An actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." *Markey v. Santangelo*, 195 Conn. 76, 78 (1985) (internal citations and quotation marks omitted).

122. Taylor never gave Defendant Dunford permission to touch him on February 17, 2022.

123. Defendant Dunford never asked Taylor to return to a seat or follow him away from the door to the detail room.

124. Taylor never entered a non-public area of the New Haven Police Department unless he was given permission to on February 17, 2022.

125. In other words, Defendant Dunford had no legitimate reason to lay his hands on Taylor.

126. Defendant Dunford twice made offensive contact with Taylor, including after Taylor told him not to touch him.

127. Defendant Dunford's actions constitute battery.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Kenroy Taylor seeks the following relief:

a. A declaratory judgment that New Haven Police Department General Order 85-1, § IV(B) is unconstitutional on its face and as applied to him under the First Amendment to the United States Constitution and Article I, § 3 of the Connecticut Constitution;

b. A declaratory judgment that New Haven Police Department General Order 85-1, § IV(B) violates Title VII and Conn. Gen. Stat. § 46a-60 by failing to permit reasonable religious accommodations;

c. A permanent injunction enjoining Defendant City of New Haven and its employees from enforcing New Haven Police Department General Order 85-1, § IV(B)'s prohibition on the growth of facial hair for religious reasons;

d. Compensatory damages;

e. Punitive damages as allowed by law;

f. Costs and attorneys' fees;

g. Any other relief that the Court deems necessary and proper.

THE PLAINTIFF

/s/ Cameron L. Atkinson /s/
CAMERON L. ATKINSON
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
catkinson@pattisandsmith.com
Federal Bar No.: ct31219

**JURY CLAIM**

Pursuant to the Seventh Amendment to the United States Constitution, the Plaintiff Kenroy Taylor claims his right to a trial of his claims by a jury because he seeks more than $20 in damages.

/s/ Cameron L. Atkinson /s/