**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
KENROY TAYLOR,                  :
                                :
         Plaintiff,             :
                                :
v.                              :
                                :
CITY OF NEW HAVEN, OTONIEL      :
REYES, RENEE DOMINGUEZ, STEPHEN :  Civil No. 3:22-cv-533 (AWT)
TORQUATI, MARK O'NEILL,         :
CHRISTOPHER CAMERON, LOUIS      :
DECRESCENZO, CARLOS CONCEICAO,  :
EDWARD DUNFORD, and MARTIN      :
FELICIANO,                      :
                                :
         Defendants.            :
------------------------------- x
```

**RULING ON MOTIONS TO DISMISS**

Plaintiff Kenroy Taylor brings a nine-count Complaint, claiming religious discrimination and disability discrimination, against the City of New Haven and eight individual members of the New Haven Police Department. His claims are as follows: Count One, a claim against the City of New Haven for religious discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2000e17; Count Two, a claim against the City of New Haven for religious discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60; Count Three, a claim against all defendants pursuant to 42 U.S.C. § 1983 for violation of the plaintiff's First Amendment right to free exercise of religion; Count Four, a claim pursuant

to Conn. Gen. Stat. § 52-571b against all defendants for
violation of the plaintiff's right to free exercise of religion;
Count Five, a claim pursuant to Conn. Gen. Stat. § 31-51q
against the City of New Haven for violation of the plaintiff's
right to free exercise of religion; Count Six, a claim against
the City of New Haven for disability discrimination in violation
of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §
12112; Count Seven, a claim against the City of New Haven for
disability discrimination in violation of the Rehabilitation
Act, 29 U.S.C. § 794; and Count Eight, a claim against the City
of New Haven for disability discrimination in violation of Conn.
Gen. Stat. § 46a-60. Defendant Otoniel Reyes has filed a motion
to dismiss the claims against him, and the remaining defendants
have filed a separate motion to dismiss. For the reasons set
forth below, the motions to dismiss are being denied in part and
granted in part.

## I.   FACTUAL BACKGROUND

The plaintiff, Kenroy Taylor, has been employed by the City
of New Haven as a police officer since 2014. Taylor is a
practicing Rastafarian. "A critical tenet of Rastafarianism for
men is the growth of hair on both the head and the face, which
symbolizes their spiritual covenant and a symbolic rejection of
evil. Rastafarians, including Taylor, believe in wearing their
hair in dreadlocks and in men growing beards." Compl. ¶ 18. In

addition, Taylor suffers from a chronic medical condition that makes shaving difficult and painful for him.

At times relevant to the Complaint, the New Haven Police Department (the "Police Department") had in effect a grooming policy through General Order 85-1, which prohibited male officers from growing facial hair except for moustaches. The policy had medical exceptions, and on occasion, the Police Department gave department-wide dispensations from the policy, including once for a charitable fundraiser.

Beginning in 2019, Taylor sought both religious and medical accommodations that would allow him to grow a beard. On January 6, 2020, defendants Lieutenant Stephen Torquati and Sergeant Martin Feliciano advised Taylor that the Police Department did not have a religious exemption to its grooming policies and required him to submit an updated doctor's note within five days. They then relieved Taylor from duty and sent him home. On the same day, Taylor complained to the City of New Haven Human Resources Department (the "HR Department"), which spoke with defendant Renee Dominguez, who became acting chief of police of the Police Department in March 2021. Dominguez advised the HR Department that Taylor could not return to work until he complied with the Police Department's grooming policies. On February 5, 2020, defendant Otoniel Reyes, then the chief of the Police Department, ordered Taylor "to report to him in the

-3-

Chief's office for discipline." Id. ¶ 36. At the meeting, Reyes ordered Taylor to shave. When Taylor refused, Reyes "threatened . . . that he would order his supervisors to 'write him up' every day that he did not comply with the grooming policies." Id. ¶ 37. Reyes then suspended Taylor for five days without pay. "Defendants Torquati and [Lieutenant Mark] O'Neil then supervised the execution of Defendant Reyes' threat." Id. ¶ 39. Defendants Lieutenant Christopher Cameron, Sergeant Louis Decrescenzo, Sergeant Carlos Conceicao, Sergeant Edward Dunford, and Feliciano "all participated in writing up Taylor in accordance with Defendant Reyes' threat to Taylor despite knowing that he was seeking religious and medical accommodations." Id. Over the next four months, the defendants manufactured allegations of misconduct against Taylor. Taylor was then placed on administrative leave and recommended for termination. He has not yet had a termination hearing before the City of New Haven Board of Police Commissioners. Taylor alleges that four other police officers who also failed to comply with the grooming policy faced no disciplinary action. Taylor claims that the defendants acted against him because of his religion and his disability.

Taylor filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") in February 2020. General Order 85-1 was modified and superseded, effective May 7,

2021, by Special Order 21-01. See Zannelli Aff. (ECF No. 18-2) ¶ 2. "Special Order 21-01 modifies General Order 85-1 and permits employees to grow facial hair in accordance with the guidelines set forth therein. Of note, Special Order 21-01 supersedes the prohibition in General Order 85-1 on the wearing of beards and allows employees to wear beards of between one-quarter and one inch in length." Id. ¶ 3. In addition, "Special Order 21-01 supersedes Special Order 15-02 in that it sets forth a new process for employees with a health condition that affects their ability to comply with Special Order 21-01 to request a reasonable accommodation under the Americans with Disabilities Act (ADA)." Id. ¶ 4.

The CHRO issued a release of jurisdiction on January 12, 2022. Taylor filed the instant action on April 12, 2022. With the exception of Counts Five and Nine, the defendants have moved to dismiss the claims in the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and/or failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomm., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States,

201 F.3d 110, 113 (2d Cir. 2000)). The party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. See Makarova, 201 F.3d at 113. In fact, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991). If genuine issues of material fact exist, a district court should not prematurely dismiss a case for lack of subject matter jurisdiction. See Haskin v. United States, 569 F. App'x 12, 15 (2d Cir. 2014) ("We conclude that the district court prematurely dismissed the [plaintiff's] suit for lack of subject matter jurisdiction, as genuine issues of material fact existed concerning the alleged negligence of [the government's] employees.").

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996), cert. denied, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1997). "When a motion to dismiss for lack of jurisdiction is

decided on the basis of affidavits and other written materials
. . . the allegations in the complaint must be taken as true to
the extent they are uncontroverted by the defendant's affidavits."
Seetransport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co.,
Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572,
580 (2d Cir. 1993) (quoting Taylor v. Phelan*, 912 F.2d 429, 431
(10th Cir. 1990) (per curiam) (citations omitted), cert. denied*,
498 U.S. 1068 (1991)).

When deciding a motion to dismiss under Rule 12(b)(6), the
court must accept as true all factual allegations in the complaint
and must draw inferences in a light most favorable to the
plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although
a complaint "does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S.
550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286
(1986)) (on a motion to dismiss, courts "are not bound to accept
as true a legal conclusion couched as a factual allegation"). "Nor
does a complaint suffice if it tenders naked assertions devoid of
further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations
must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly

incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III. DISCUSSION

#### A.   Count One: City of New Haven

Count One is a claim against the City of New Haven only for religious discrimination in violation of Title VII.

The defendants move to dismiss Count One pursuant to Rule 12(b)(1) because the plaintiff failed to exhaust his administrative remedies with respect to his Title VII claim. See Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."). "Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court." Hodge v. New York Coll. of Podiatric Med., 157 F.3d 164, 168 (2d Cir. 1998). "[A] plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the

-9-

court." Pietras v. Bd. of Fire Com'rs of Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999). "[R]eceipt of a right to sue letter . . . is subject to waiver, estoppel, or tolling only upon a showing by plaintiff of a sufficient reason for such equitable modification." Hladki v. Jeffrey's Consol., Ltd., 652 F.Supp. 388, 392 (E.D.N.Y. 1987). For this reason, dismissal for failure to exhaust administrative remedies is subject to Rule 12(b)(6) for failure to state a claim upon which relief can be granted rather than Rule 12(b)(1) for lack of subject matter jurisdiction. See Pietras, 180 F.3d at 474.

The plaintiff concedes that the Complaint does not allege that he received the EEOC right to sue letter before filing the Complaint. "Mr. Taylor received a right to sue letter from the EEOC . . . on June 23, 2022, a date subsequent to the filing of the initial complaint." Pl.'s Opp. (ECF No. 28) at 7. However, it is clear from the EEOC charge number that the plaintiff filed his complaint in fiscal year 2020. See Ex. A, Compl. (ECF No. 1-1) (listing "EEOC No. 16A202000590"); Ex. 2, Defs.' Mot. (ECF No. 19-3) at 13 (dated February 11, 2020). "The procedural requirements of Title VII should be construed liberally in order to effectuate its remedial purposes." Shanks v. Walker, 116 F.Supp.2d 311, 313 (D. Conn. 2000). "In line with this policy, issuance of a right to sue letter validates a Title VII action commenced prior to the receipt of the notice." Id. See also

<u>Kounitz v. Slaatten</u>, 901 F.Supp. 650, 655 (S.D.N.Y. 1995) ("Courts have held that receipt of a right to sue letter subsequent to commencement of a Title VII action and while the action is still pending satisfies the statutory prerequisite that a plaintiff obtain notice of the right to sue before filing a civil action under Title VII."). Although the plaintiff does not explain why waiver, estoppel, or tolling is appropriate in this case with respect to the ninety-day deadline for filing a Title VII claim after receiving the right to sue letter, "[b]arring a Title VII plaintiff, who received his right-to-sue letter after filing suit, from ever pursuing his Title VII claim . . . would be an extreme sanction, contrary to the general policy of law to find a way to prevent the loss of valuable rights." <u>Pinkard v. Pullman-Standard</u>, 678 F.2d 1211, 1218 (5th Cir. 1982). <u>Cf.</u> <u>Segreto v. Kirschner</u>, 1998 WL 289145, at *2 (D. Conn. Mar. 11, 1998) (dismissing suit where no right to sue letter issued and plaintiff did not claim he filed administrative claim prior to filing suit in federal court).

Therefore, the motion to dismiss is being granted pursuant to Rule 12(b)(6) as to Count One, with leave to amend that claim to allege the facts surrounding the plaintiff's receipt of the right to sue letter from the EEOC. <u>See</u> <u>Shanks</u>, 116 F.Supp. at 313; <u>Pollard v. City of Hartford</u>, 539 F.Supp. 1156, 1160-62 (D. Conn. 1982).

**B.   Count Two: City of New Haven**

Count Two is a claim against the City of New Haven only for religious discrimination in violation of Conn. Gen. Stat. § 46a-60.

The defendants argue that Count Two "should be dismissed as untimely because suit was not commenced within 90 days of the Release of Jurisdiction and two years of the date of filing the complaint with the Commission on Human Rights and Opportunities." Defs.' Mem. (ECF No. 19-1) at 6.

"As the Court is exercising supplemental jurisdiction over Plaintiff's CFEPA claims, state law applies for purposes of determining when an action is commenced." Shlafer v. Wackenhut Corp., 837 F.Supp.2d 20, 24 (D. Conn. 2011). Conn. Gen. Stat. § 46a-102 provides that "[a]ny action brought in accordance with section 46a-100 shall be brought within two years of the date of filing of the complaint with the commission." In addition, Conn. Gen. Stat. § 46a-101(e) provides that such actions must also "be brought not later than ninety days after the receipt of the release from the commission." The plaintiff alleges that he filed his complaint with the CHRO on or about February 28, 2020. Compl. ¶ 52.[1] The CHRO issued a release of jurisdiction on

---

[1] The defendants maintain that "Plaintiff filed his complaint with the Commission on Human Rights and Opportunities sometime between February 4, 2020 when it was signed and February 11, 2020 when it was served by the Commission." Defs.' Mem. at 7.

January 12, 2022. <u>See</u> Compl., Ex. A.

    With respect to the two-year requirement, the plaintiff's claim is timely because the plaintiff has pled that the defendants engaged in a continuing course of conduct, which tolled the statute of limitations. Under Connecticut law, "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." <u>Handler v. Remington Arms. Co.</u>, 144 Conn. 316, 321 (1957). "The continuing violation doctrine is an exception to . . . state law statutes of limitations," including those applicable to CFEPA. <u>Maloney v. Connecticut Orthopedics, P.C.</u>, 47 F.Supp.2d 244, 248 (D. Conn. 1999). "[I]n order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." <u>Neuhaus v. DeCholnoky</u>, 280 Conn. 190, 201 (2006) (citations and emphases omitted). This finding is often predicated on "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of the defendant related to the prior act." <u>Id.</u> Although "[a] string of incidents which are each a discrete act or a single completed action does not constitute a continuing violation which tolls the statute of limitations," <u>Vaden v. Connecticut</u>, 557 F.Supp.2d 279, 284

(D. Conn. 2008) (internal quotation marks and citation omitted),
where "a plaintiff has experienced a continuous practice and
policy of discrimination, . . . the commencement of the statute
of limitations period may be delayed until the last
discriminatory act in furtherance of it," Fitzgerald v.
Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation
marks omitted).

The plaintiff alleges that "[t]he Defendants' actions . . .
and New Haven Police Department General Order 85-1, § IV(B)
burdened, and continued to burden, Taylor's free exercise of his
religion," Compl. ¶ 79, and that "[t]he actions of the
Defendants violated, and continue to violate, Taylor's rights
under Article I, § 3 of the Connecticut Constitution," id. ¶ 83.
The plaintiff alleges that in "the next four months" after the
plaintiff's February 2020 interactions with the defendants, "the
Defendants manufactured a bevy of allegations of misconduct
against Taylor," id. ¶ 41; that they "placed him on
administrative leave, which he remains on to this day, and
recommended his termination to the City of New Haven's Board of
Police Commissioners – a hearing which has yet to occur," id. ¶
42; and that they "took these actions . . . because they have
animus toward Taylor's religious practices and his disability,"
id. ¶ 43.

The plaintiff has thus alleged that the defendants engaged in a continuous practice and policy of discrimination to which the plaintiff was subjected until at least June 2020. The plaintiff has also alleged that the defendants created a hostile work environment during the four-month period after his interactions with certain of the defendants in February 2020. Drawing all reasonable inferences in the plaintiff's favor, the plaintiff has alleged "some later wrongful conduct of the defendant[s] related to the prior act[s]," i.e., the acts giving rise to the plaintiff's CHRO complaint, and he has thus pled a continuing course of conduct on the part of the defendants until at least June 2020. Neuhaus, 280 Conn. at 201. Accordingly, the two-year period for filing suit under Conn. Gen. Stat. § 46a-102 expired in June 2022 at the earliest, rather than in February 2022, and this action was filed on April 12, 2022.

With respect to the ninety-day requirement, however, the plaintiff's claim is untimely. "Under Connecticut law, it is well settled that an action is commenced for purposes of a statute of limitations on the date of service of the complaint upon the defendant." Shlafer, 837 F.Supp.2d at 24. The defendants were served on May 10, 2022 and May 11, 2022. See ECF No. 8 at 2. Because the defendants were served more than ninety days after the plaintiff received the release of jurisdiction, the plaintiff's CFEPA claim is untimely. See Conn. Gen. Stat. §

46a-101(e).

The plaintiff contends that Section 52-592, Connecticut's accidental failure of suit statute, applies here. However, "§ 52-592 applies only when there has been an original action that had been commenced in a timely fashion." Capers v. Lee, 239 Conn. 265, 271 (1996). Because the plaintiff has not shown that he timely commenced this action with respect to his CFEPA claim, Section 52-592 is inapplicable.

The plaintiff also contends that Conn. Gen. Stat. § 52-593a may apply. See Pl.'s Opp. at 9. Conn. Gen. Stat. § 52-593a(a) provides that "a cause or right of action shall not be lost because of the passage of time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery." Thus, the process to be served must be personally delivered to a process server, and process must be served within thirty days of delivery. The plaintiff alleges that he received the release on January 12, 2022. See Compl. ¶ 53. The ninety-day period ended on April 12, 2022, but the summonses did not issue until April 13, 2022, after the period had expired. See ECF No. 7. Thus, the plaintiff cannot show that he delivered the process to be served--i.e., the summonses and Complaint--to a process server within the

ninety-day period after the plaintiff received the release of jurisdiction. Thus, Section 52-593a(a) does not apply here.

Therefore, the motion to dismiss is being granted as to Count Two.

### C.    Count Three: All Defendants

Count Three is a claim pursuant to 42 U.S.C. § 1983 for violation of the plaintiff's First Amendment right to free exercise of religion.

The defendants contend that all claims against defendant O'Neill in his individual capacity must be dismissed because the plaintiff failed to effectuate service on him. See Defs.' Mem. at 5-6. The plaintiff concedes this point. See Pl.'s Opp. at 5.

The defendants also contend that Count Three "should be dismissed as moot pursuant to Rule 12(b)(1) given Special Order 21-01 which supersedes General Order 85-1." Defs.' Mem. at 11. "The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties." Catanzano v. Wing, 277 F.3d 99, 107 (2d Cir. 2001). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "Although past injuries may provide a basis for standing to seek

-17-

money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 239 (2d Cir. 2016). The defendants note that the "Plaintiff lodges no challenge to Special Order 21-01," Defs.' Mem. at 12, but the plaintiff seeks compensatory and punitive damages against the defendants for past violations of his rights, <u>see</u> Compl. ¶¶ 72, 75, 76, in addition to declaratory and injunctive relief as to General Order 85-1, <u>see</u> <u>id.</u> at 19. Thus, Count Three is moot as to the plaintiff's request for declaratory and injunctive relief as to General Order 85-1, but it is not moot as to the plaintiff's claim for compensatory and punitive damages.

The defendants also maintain that the plaintiff has failed to state a claim upon which relief can be granted. With respect to the individual defendants, to prevail on a claim under Section 1983, the plaintiff must show that the defendants acted under color of law to deprive him of any rights, privileges, or immunities secured by the Constitution and laws, i.e., that the defendants were personally involved in depriving him of his rights. <u>See</u> <u>Raspardo v. Carlone</u>, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant."). "To plead a First Amendment

retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (citation omitted). The defendants do not contest that they acted under color of state law, but they contest whether the plaintiff has alleged that their conduct deprived of him of his First Amendment rights, specifically whether he had a right protected by the First Amendment and whether the defendants' actions were motivated or substantially caused by his exercise of that right.

The defendants first argue that "[t]here are no factual allegations to support an inference that the Individual Defendants engaged in any specific conduct to enforce GO-85-1," Defs.' Mem. at 23, i.e., that the plaintiff has not "allege[d] facts showing individual personal involvement in the alleged deprivation of a constitutional right . . . as [] is required for relief under § 1983," id. at 18. The court disagrees.

The Complaint names several individual defendants and describes their individual actions separately, see Compl. ¶¶ 33, 34, 36-38, 39, and it characterizes these acts as arising from "animus toward Taylor's religious practices and his disability," id. ¶ 43. Defendants Torquati and Feliciano relieved Taylor of

duty on January 6, 2020 because there was no religious exemption
to the Police Department's grooming policies. See id. ¶ 33.
Defendant Dominguez "informed [the HR Department] that Taylor
could not return to work until he complied with the [Police]
Department's grooming policies" after Taylor "express[ed] his
concerns that he was being religiously discriminated against."
Id. ¶ 34. Defendant Reyes "ordered Taylor to report to him in
the Chief's office for discipline" and "ordered Taylor to shave
his beard despite knowing that Taylor had a beard for religious
reasons and because he had a medical condition." Id. ¶ 36.
Defendant Reyes "threatened him that he would order his
supervisors to 'write him up' every day that he did not comply,"
id. ¶ 37, and "suspended him for 5 days without pay," id. ¶ 38.
Defendant Torquati "supervised the execution of Defendant Reyes'
threat to have Taylor written up for wearing a beard for
religious reasons." Id. ¶ 39. Defendant Feliciano "participated
in writing up Taylor . . . despite knowing that he was seeking
religious and medical accommodations." Id. "Defendants Cameron,
Decrescenzo, Conceica, [and] Dunford" also "participated in
writing up Taylor . . . despite knowing that he was seeking
religious and medical accommodations." Id. These allegations are
sufficient to "give each defendant fair notice of what the
plaintiff's claim is and the ground upon which it rests." Arias
v. East Hartford, 2021 WL 3268846, at *3 (D. Conn. July 30,

2021) (quoting <u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 34
(2d Cir. 2001)). Thus, the plaintiff has sufficiently pled
specific conduct by each individual defendant.

The defendants also argue that "Plaintiff has failed to
allege the deprivation of any constitutional right." Defs.' Mem.
at 18. <u>See</u> <u>id.</u> at 16. "Where the government seeks to enforce a
law that is neutral and of general applicability, the government
need only demonstrate a rational basis for its enforcement, even
if enforcement of the law incidentally burdens religious
practices." <u>Ass'n of Jewish Camp Operators v. Cuomo</u>, 470
F.Supp.3d 197, 217 (N.D.N.Y. 2020) (internal quotation marks and
citations omitted). "A law burdening religious conduct that is
*not* both neutral and generally applicable, however, is subject
to strict scrutiny." <u>Cent. Rabbinical Cong. of the United States</u>
<u>v. New York City Dep't of Health & Mental Hygiene</u>, 763 F.3d 183,
193 (2d Cir. 2014) (emphasis in original). "A law is not
generally applicable if it invites the government to consider
the particular reasons for a person's conduct by providing a
mechanism for individualized exemptions." <u>Fulton v. City of</u>
<u>Philadelphia, Penn.</u>, 141 S.Ct. 1868, 1877 (2021) (internal
quotation marks and citations omitted). "A law also lacks
general applicability if it prohibits religious conduct while
permitting secular conduct that undermines the government's
asserted interests in a similar way." <u>Id.</u> "A government policy

can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." Id. at 1881. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." Id.

The plaintiff has alleged facts sufficient to show that the general order at issue burdened his religious conduct, see Compl. ¶¶ 18, 20, 24, and that the order lacked general applicability, both because it invited individualized exemptions, see id. ¶ 24, and because the City of New Haven permitted secular conduct contrary to the general order, see id. ¶¶ 25, 60. Thus, the plaintiff has alleged facts which, if true, demonstrate that the general order is subject to strict scrutiny and that the government can achieve its interests in a manner that does not burden religion. Consequently, for purposes of this stage of the case, the plaintiff has shown that he had a right protected by the First Amendment.

Next, the defendants assert that "there are no allegations to support an inference that the Individual Defendants were aware that Plaintiff was a practicing Rastafari, the specific religious beliefs associated with the same, that he sought an accommodation to grow a beard for religious purposes, or that they engaged in any conduct to prevent Plaintiff from freely exercising his religion." Defs.' Mem. at 23-24. Thus, the

defendants maintain, the court cannot "infer that any of the Individual Defendants acted with any intent to discriminate" against the defendant. Id. at 24. "The Second Circuit Court of Appeals has recognized that the questions of a defendant's motive and intent, though critical to First Amendment retaliation claims, 'are difficult to plead with specificity in a complaint.'" Karol v. City of New York, 396 F.Supp.3d 309, 317 (S.D.N.Y. 2019) (quoting Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)). "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Gagliardi, 18 F.3d at 195. The Complaint alleges that "Defendants Torquati and Feliciano . . . told [Taylor] that the Department does not have a religious exemption to its grooming policies," Compl. ¶ 33, and "relieved [Taylor] of duty," id. ¶ 35. After Taylor spoke with the HR Department about "his concerns that he was being religiously discriminated against," the HR Department reached out to defendant Dominguez, who "informed [the HR Department] that Taylor could not return to work until he complied with the [Police] Department's grooming policies." Id. ¶ 34. "Defendant Reyes ordered Taylor to shave his beard despite knowing that Taylor had a beard for religious reasons," id. ¶ 36, and, despite that knowledge,

"threatened him that he would order his supervisors to 'write him up' every day that he did not comply with the grooming policies," id. ¶ 37, and "suspended him for 5 days without pay," id. ¶ 38. "Defendants Cameron, Decrescenzo, Conceica, Dunford, and Feliciano all participated in writing up Taylor . . . despite knowing that he was seeking religious and medical accommodations." Id. ¶ 39. Based on the foregoing, the court concludes that the plaintiff has alleged facts sufficient to support an inference of retaliatory intent. Taken in combination with the plaintiff's allegations that the individual defendants knew that he was wearing a beard for religious reasons, the individual defendants' actions were sufficiently proximate in time to suggest that they were motivated by the plaintiff's effort to exercise his First Amendment rights.

With respect to the City of New Haven, "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). The defendants assert that "Plaintiff has wholly failed to allege 'action pursuant to official municipal policy' that caused his alleged injury." Defs.' Mem. at 23

(quoting Connick v. Thompson, 563 U.S. 51, 60 (2011)). But the Complaint alleges that "New Haven Police Department General Order 85-1, § IV(B) is an official municipal policy or custom promulgated by the Defendant, City of New Haven." Compl. ¶ 71. This municipal policy, which the plaintiff alleges is "not neutral and generally applicable," id. ¶ 73, "caused Taylor to be subjected to the Defendants' denial of his First Amendment right to freely exercise his religion," id. ¶ 72, because it led the individual defendants to act so that Taylor was "relieved of duty," id. ¶ 35, "written up for wearing a beard for religious reasons," id. ¶ 39, and "placed . . . on administrative leave" and "recommended [for] termination," id. ¶ 42. The Complaint alleges that "[t]he individual Defendants' actions in enforcing the policy," id. ¶ 75, i.e., as described earlier in the Complaint, id. ¶¶ 33-42, "violated Taylor's First Amendment right to freely exercise his religion," id. ¶ 75. This is sufficient to plead "that an official policy of the municipality caused the constitutional injury," so the plaintiff has stated a claim against the City of New Haven. Roe, 542 F.3d at 36. Because punitive damages are unavailable against a municipality, this claim against the City of New Haven may proceed only as to compensatory damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

The defendants also argue that "Count Three should be
dismissed as to the Individual Defendants pursuant to Rule
12(b)(6) because they are entitled to qualified immunity."
Defs.' Mem. at 13. "The Supreme Court has repeatedly stressed
the importance of resolving immunity questions at the earliest
possible stage in litigation." Sabir v. Williams, 52 F.4th 51,
63 (2d Cir. 2022) (internal quotation marks, ellipses, and
citations omitted). However, "advancing qualified immunity as
grounds for a motion to dismiss is almost always a procedural
mismatch." Chamberlain v. City of White Plains, 960 F.3d 100,
111 (2d Cir. 2020). This is because "qualified immunity is an
affirmative defense that is typically asserted in an answer,"
id. at 110, and a plaintiff has no duty to meet "a heightened
pleading standard under which they must plead not only facts
sufficient to make out their claim but also additional facts to
defeat an assertion of qualified immunity," id. at 111. Thus,
"as a general rule, 'the defense of qualified immunity cannot
support the grant of a [Rule] 12(b)(6) motion.'" Chamberlain,
960 F.3d at 110 (quoting Green v. Maraio, 722 F.2d 1013, 1018
(2d Cir. 1983)).

"[A] defendant presenting an immunity defense on a Rule
12(b)(6) motion instead of a motion for summary judgment must
accept the more stringent standard applicable to this procedural
route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). In

addition to showing that facts supporting the defense appear on
the face of the complaint, as with all Rule 12(b)(6) motions,
the defendant must also show that the alleged facts, if true, do
not plausibly state a claim upon which relief can be granted.
See Chamberlain, 960 F.3d at 110; see also Twombly, 550 U.S. at
547. "Moreover, the plaintiff is entitled to all reasonable
inferences from the facts alleged, including those that defeat
the immunity defense." Horn, 11 F.4th at 170 (internal quotation
marks and citations omitted). In determining whether qualified
immunity applies, "a court must decide whether the facts that a
plaintiff has alleged . . . make out a violation of a
constitutional right." Pearson v. Callahan, 555 U.S. 223, 232
(2009). "Second, if the plaintiff has satisfied this first step,
the court must decide whether the right at issue was 'clearly
established' at the time of defendant's alleged misconduct." Id.

     The defendants have not met their burden. The defendants
state that the plaintiff must have "pled sufficient facts to
show that the individual Defendants acted unlawfully within
their capacity as government officials," Defs.' Mem. at 14, and
that the plaintiff must "plead[] that, objectively, a reasonable
official would have known that the conduct was clearly
unlawful," id. at 15. In substance, this shifts the defendants'
burden to the plaintiff by requiring him to defeat a qualified
immunity defense in the Complaint even before the defendants

have asserted it in an answer. But the plaintiff is not required
to "plead . . . additional facts to defeat an assertion of
qualified immunity." Chamberlain, 960 F.3d at 111. The Complaint
alleges that the defendants violated his constitutional rights,
not only by forbidding him from wearing a beard in accordance
with the plaintiff's religious beliefs but also by retaliating
against him for seeking to exercise his religious beliefs. The
defendants have not identified "facts supporting the defense
[which] appear on the face of the complaint" as to either issue.
Horn, 11 F.4th at 170. The court notes that cases in this
Circuit suggest contours to the right to grow a beard even in
the more restrictive context of correctional facilities, see
Burgin v. Henderson, 536 F.2d 501, 503-04 (2d Cir. 1976)
(remanding case for "a factual hearing on the state's purported
justification for a rule preventing beards"); Sostre v. Preiser,
519 F.2d 763, 765 (2d Cir. 1975) (remanding "for the development
of a record which includes, inter alia, the specific language of
the rules or regulations in question, the authority for their
promulgation, the pattern of their application, and more
substantial evidence on the hygiene, security, contraband and
identification issues than we have before us"). In Monroe v.
Bombard, the court observed that Burgin "provides the analytical
framework within which" cases involving "the right of a member
of an established religion to wear a beard in prison" "must be

-28-

decided," 422 F.Supp. 211, 216 (S.D.N.Y. 1976), and concluded that state interests in that context "can reasonably be met through other viable and less restrictive means than the absolute ban on the wearing of beards," id. at 218.

Therefore, the motion to dismiss is being granted pursuant to Rule 12(b)(2) as to defendant O'Neill and granted pursuant to Rule 12(b)(1) as to the plaintiff's claim for declaratory and injunctive relief as well as the plaintiff's claim for punitive damages against the City of New Haven. The motion is being denied as to the plaintiff's claim for compensatory damages as to all defendants and his claim for punitive damages as to the individual defendants.

### D.   Count Four: All Defendants

Count Four is a claim, pursuant to Conn. Gen. Stat. § 52-571b, against all defendants for violation of the plaintiff's right of free exercise of religion under Article I, § 3 of the Connecticut Constitution.

As discussed with respect to Count Three, claims against defendant O'Neill in his individual capacity must be dismissed for failure to effect service.

Likewise, for the reasons discussed above, Count Four is moot insofar as the plaintiff seeks injunctive and declaratory relief.

Although Count Four is not moot insofar as the plaintiff
seeks compensatory and punitive damages, the court lacks subject
matter jurisdiction over Count Four insofar as the plaintiff
seeks monetary damages against the City of New Haven. "[Section]
52-571b does not contain an express waiver of the state's
sovereign immunity with respect to monetary claims, and the
strict interpretation of 'appropriate relief,'" as defined in
the statute, "is therefore limited to injunctive or declaratory
relief." Gawlik v. Malloy, 2019 WL 3021829, at *13
(Conn. Super. Ct. May 31, 2019). See Columbia Air Servs., Inc.
v. Dep't of Transp., 293 Conn. 342, 349 (2009) ("[S]tatutes in
derogation of sovereign immunity should be strictly
construed. . . . Where there is any doubt about their meaning or
intent they are given the effect which makes the least rather
than the most change in sovereign immunity.").

    With respect to the individual defendants, Count Four fails
to state a claim upon which relief can be granted because
Section 52-571b authorizes a person to obtain appropriate relief
"against the state or any political subdivision of the state"
and does not clearly authorize a cause of action against any
other person. Conn. Gen. Stat. § 52-571b(c). See also Gawlik v.
Semple, 2021 WL 4430601, at *18 (D. Conn. Sept. 27, 2021).

-30-

Therefore, the motion to dismiss is being granted pursuant to Rule 12(b)(1) as to the City of New Haven and pursuant to Rule 12(b)(6) as to the individual defendants.

**E.   Count Five: City of New Haven**

The defendants do not move to dismiss Count Five.

**F.   Count Six: City of New Haven**

Count Six is a claim against the City of New Haven only for disability discrimination in violation of the ADA.

The defendants move to dismiss the plaintiff's ADA claim for lack of subject matter jurisdiction because the Complaint does not allege that the plaintiff received a right-to-sue letter in connection with his ADA claim. See Defs.' Mem. at 9. Although "[a] plaintiff must file a timely charge with the EEOC and must receive a 'right to sue' letter from the EEOC before commencing an action pursuant to the ADA," exhaustion of administrative remedies "is not a jurisdictional requirement." Caputo v. Copiague Union Free Sch. Dist., 218 F.Supp.3d 186, 192 (E.D.N.Y. 2016). See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Nevertheless, for the reasons discussed with respect to Count One, the motion is being granted

for failure to state a claim upon which relief can be granted for failure to exhaust administrative remedies.

In addition, the motion is being granted for failure to state a claim because the plaintiff does not allege facts that could show "that he was disabled within the meaning of the ADA in that he has an impairment that substantially limits one or more major life activities." Defs.' Mem. at 10. Although the plaintiff alleges that he "has a disability . . . in the form of a skin condition that makes it impossible for him to shave consistently without aggravating his skin to the point of requiring medical condition," Compl. ¶¶ 91, 102, 112, the Complaint does not allege facts that could support a conclusion that this condition qualifies as a "physical . . . impairment that substantially limits one or more major life activities" of the plaintiff, as the term "disability" is defined in the ADA, 42 U.S.C. § 12102(1)(A). See McNamara v. Tourneau, Inc., 496 F.Supp.2d 366, 375 (S.D.N.Y. 2007) ("A plaintiff asserting a violation of the ADA must prove that: . . . plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA[.]").

Therefore, the motion to dismiss is being granted pursuant to Rule 12(b)(6) as to Count Six, but not with leave to amend due to the plaintiff's failure in his opposition to identify facts that could establish that he has an impairment that

substantially limits one or more major life activities.

>    **G.   Count Seven: City of New Haven**

Count Seven is a claim against the City of New Haven only for disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794.

Similar to the situation with respect to Count Six, the plaintiff has not alleged facts that could establish that his "physical . . . impairment . . . constitutes or results in a substantial impediment to employment" as required by the Rehabilitation Act. 29 U.S.C. § 705(20)(A)(i). See Pl.'s Opp. at 9.

Therefore, the motion to dismiss is being granted pursuant to Rule 12(b)(6) as to Count Seven, but, as with Count Six, not with leave to amend.

>    **H.   Count Eight: City of New Haven**

Count Eight is a claim against the City of New Haven only for disability discrimination in violation of Conn. Gen. Stat. § 46a-60.

The defendants argue that Count Eight "should be dismissed as untimely because suit was not commenced within 90 days of the Release of Jurisdiction and two years of the date of filing the complaint with the Commission on Human Rights and Opportunities." Defs.' Mem. at 6.

For the reasons set forth above in the discussion of Count Two, the plaintiff's suit is timely as to the two-year requirement in Conn. Gen. Stat. § 46a-102 but untimely as to the ninety-day requirement in Conn. Gen. Stat. § 46a-101(e).

Therefore, the motion to dismiss is being granted as to Count Eight.

**I.   Count Nine: Edward Dunford**

The defendants do not move to dismiss Count Nine.

**IV.   CONCLUSION**

For the reasons set forth above, Defendant Otoniel Reyes's Motion to Dismiss (ECF No. 18) is hereby GRANTED in part and DENIED in part, and the Motion to Dismiss (ECF No. 19) filed by the remaining defendants is hereby GRANTED in part and DENIED in part. Count One (with leave to amend), Count Two, Count Four, Count Six, Count Seven, and Count Eight are being dismissed in their entirety. Count Three is being dismissed in part. The case will proceed on the remaining claims in Count Three, as well as on Count Five and Count Nine. Mark O'Neill is no longer a defendant in this case.

Any motion for leave to amend the Complaint in accordance with Fed. R. Civ. P. 15(a) and D. Conn. L. Civ. R. 7(f) must be filed within 21 days of this ruling.

It is so ordered.

Dated this 10th day of March 2023, at Hartford,

Connecticut.

                                    /s/AWT
                              Alvin W. Thompson
                         United States District Judge